# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SELF-HELP CREDIT UNION, as
successor in interest to WINSTON-SALEM
FEDERAL CREDIT UNION,

    Plaintiff,

v.

FISERV SOLUTIONS, LLC f/k/a
FISERV SOLUTIONS, INC. and
FISERV, INC.,

    Defendants.

Case No. 1:25-cv-01112-TDS-LPA

## **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT**

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ............................................................................................iii

NATURE OF THE MATTER BEFORE THE COURT ......................................................1

FACTUAL BACKGROUND ...........................................................................................1

QUESTIONS PRESENTED .............................................................................................3

ARGUMENT....................................................................................................................4

    I.     SELF-HELP'S CLAIMS ARE TIME BARRED...........................................4

    II.    SELF-HELP HAS NOT PLAUSIBLY ALLEGED BREACH OF
           ANY CONTRACTUAL OR QUASI-CONTRACTUAL
           OBLIGATION...........................................................................................6

          A.    The Complaint Disregards the Agreement's Schedules and
                Exhibits and Does Not Allege That Fiserv Failed to Perform
                Its Obligations for Any Particular Product or Service. .....................6

          B.    Self-Help's Reliance on Sections 3 and 4 of the Agreement Is
                Irreconcilable with the Agreement's Plain Language. .......................8

               1.    Self-Help Cannot State a Claim Under Section 3 of the
                       Agreement. ..............................................................................8

               2.    Self-Help Cannot State a Claim Under Section 4 of the
                       Agreement. ............................................................................12

          C.    Self-Help's Assertions about N.Y General Obligation Law §
                5-903 Are Facially Invalid. .............................................................14

          D.    Self-Help's Unjust Enrichment Claim and Request for
                 Equitable Remedies Fall With Its Contract Claims...........................14

    III.   SELF-HELP'S FRAUD CLAIM FAILS AS A MATTER OF LAW. .........16

          A.    Self-Help's Fraud Claim Alleges Only that Fiserv Failed to
                Perform Contractual Promises and Is Barred by Economic
                Loss Doctrine. .................................................................................17

i

B.     Self-Help Has Not Plausibly Pleaded Reliance. ............................... 19

IV.    SELF-HELP DOES NOT PLAUSIBLY PLEAD "TRADE SECRETS" OR "MISAPPROPRIATION." ................................................. 21

V.    SELF-HELP'S CHAPTER 75 CLAIM FAILS AS A SIMPLE REHASH OF ITS BREACH OF CONTRACT CLAIM. ............................ 24

CONCLUSION ............................................................................................................. 25

CERTIFICATE OF WORD COUNT .............................................................................. 26

CERTIFICATE OF SERVICE ......................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
  19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015) ............................................................ 11

*ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*,
  917 F.3d 206 (4th Cir. 2019) ............................................................................ 6

*Aira Jewels, LLC v. Mondrian Collection, LLC*,
  2024 WL 1255798 (S.D.N.Y. Mar. 25, 2024) .................................................. 22

*AMR Corp.*,
   730 F.3d 88, 99 (2d Cir. 2013) ....................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 4

*Birtha v. Stonemor, N.C., LLC*,
  727 S.E.2d 1 (N.C. Ct. App. 2012) ................................................................. 24

*Block, Inc. Sec. Litig.*,
   2025 WL 2607890, at *7 (S.D.N.Y. Sept. 9, 2025) ....................................... 13

*Boart Longyear Ltd. v. All. Indus., Inc.*,
  869 F.Supp.2d 407 (S.D.N.Y. 2012) ............................................................... 14

*Brainbuilders LLC v. EmblemHealth, Inc.*,
  2022 WL 3156179 (S.D.N.Y. Aug. 8, 2022) .................................................... 6

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
  353 F.Supp.3d 1070, 1087 (D. Colo. 2018) .................................................... 22

*Cherokee Owners Corp. v. DNA Contracting, LLC*,
  96 A.D.3d 480 (N.Y. App. Div. 2012) ............................................................ 15

*Childress v. Nordman*,
  78 S.E.2d 757 (N.C. 1953) .............................................................................. 21

iii

*Cloer v. King Arthur Inc.*,
　918 S.E.2d 479 (N.C. Ct. App. 2025)....................................................................21

*Cody Creek Park, Inc. v. Capital One Servs., LLC*,
　2017 WL 3172411 (M.D.N.C. 2017).....................................................................5

*Cole v. Macklowe*,
　99 A.D.3d 595 (N.Y. App. Div. 2012) ................................................................10

*Comer v. Pers. Auto Sales, Inc.*,
　368 F.Supp.2d 478 (M.D.N.C. 2005) ..................................................................16

*Dauphin v. Crownbrook ACC LLC*,
　2014 WL 2002822 (E.D.N.Y. May 15, 2014) .....................................................15

*Davis v. Univ. of N. Carolina at Greensboro*,
　2022 WL 3586093 (M.D.N.C. Aug. 22, 2022).....................................................10

*Edwards v. Sequoia Fund, Inc.*,
　938 F.3d 8 (2d Cir. 2019)......................................................................................6

*Gillen v. Town of Hempstead Town Bd.*,
　63 Misc.3d 653 (N.Y. Sup. Ct. 2019) .................................................................13

*Hale v. MacLeod*,
　904 S.E.2d 142 (N.C. App. 2024)........................................................................16

*Henry v. Bank of Am.*,
　147 A.D.3d 599 (N.Y. App. Div. 2017) ................................................................5

*Inc. Vill. of Saltaire v Zagata*,
　280 A.D.2d 547 (N.Y. App. Div. 2001) ................................................................5

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*,
　390 F.Supp.2d 479, 499 (D. Md. 2005).................................................................11

*Kumar v. Patel*,
　2024 WL 849419 (N.C. Super. Feb. 28, 2024)....................................................21

*Lawley v. Liberty Mut. Grp., Inc.*,
　2012 WL 4513622 (W.D.N.C. Sept. 28, 2012) ......................................................5

*Lowe's Companies, Inc. v. Pac. Rsch. Grp.*,
　2007 WL 1040481 (W.D.N.C. Mar. 29, 2007) ....................................................19

iv

*McCauley v. Hospira, Inc.*,
2011 WL 3439145 (M.D.N.C. Aug. 5, 2011) ............................................... 17

*Meda AB v. 3M Co.*,
969 F.Supp.2d 360 (S.D.N.Y. 2013) .......................................................... 11

*MRE Tech. Sols. LLC v. Smiths Detection, Inc.*,
216 A.D.3d 430 (N.Y. App. Div. 2023) ...................................................... 4

*Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*,
909 F.3d 655 (4th Cir. 2018) ..................................................................... 4

*Peter Marco, LLC v. Banc of Am. Merch. Servs., LLC*,
660 F.Supp.3d 453 (W.D.N.C. 2023) ......................................................... 20

*Piccirilli v. Yonaty*,
204 A.D.3d 1322 (N.Y. App. Div. 2022) .................................................... 10

*Post v. Avita Drugs, LLC*,
2017 WL 4582151 (N.C. Super. Oct. 11, 2017) .......................................... 24

*Romanoff v. Romanoff*,
148 A.D.3d 614 (N.Y. App. Div. 2017) ...................................................... 15

*Sports Med Props., LLC v. Talib*,
2019 WL 3403372 (W.D.N.C. July 26, 2019) ............................................. 7

*Strum v. Exxon Co., USA*,
15 F.3d 327 (4th Cir. 1994) .................................................................. 17, 19

*Stuart v. Kyocera AVX Components Corp.*,
769 F.Supp.3d 476 (D.S.C. 2025) ............................................................. 14

*Superior Performers, Inc. v. Thornton*,
2021 WL 2156960 (M.D.N.C. May 27, 2021) ............................................. 17

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
70 F.4th 759 (4th Cir. 2023) ................................................................. 22, 23

*Sysco Mach. Corp. v. DCS USA Corp.*,
143 F.4th 222 (4th Cir. 2025) ............................................................... 21, 23

*T.F. Demilo Corp. v. E.K. Const. Co.*,
207 A.D.2d 480 (N.Y. App. Div. 1994) ...................................................... 15

Case 1:25-cv-01112-TDS-LPA    Document 33    Filed 12/30/25    Page 6 of 35

*Taylor v. Bank of Am., N.A.*,
  898 S.E.2d 740 (N.C. 2024) ......................................................................... 5

*Trepp, LLC v. McCord Dev., Inc.*,
  100 A.D.3d 510 (N.Y. App. Div. 2012) ....................................................... 14

*Trustpilot Damages LLC v. Trustpilot Inc.*,
  2022 WL 2124865 (2d Cir. June 13, 2022) ................................................. 14

*UBS Painwebber, Inc. v. Aiken*,
  197 F.Supp.2d 436 (W.D.N.C. 2002) ........................................................... 22

*United Guar. Residential Ins. Co. of N. Carolina v. Countrywide Fin. Corp.*,
  2010 WL 11541968 (M.D.N.C. Sept. 2, 2010) ............................................ 17

*Velez v. Bank of New York Mellon Tr. Co. N.A.*,
  2012 WL 5305508 (E.D. Va. Oct. 23, 2012) ................................................ 16

*Velocitor Sols., LLC v. ASA Coll., Inc.*,
  2022 WL 18135189 (M.D.N.C. Oct. 12, 2022) ............................................ 15

*Victor v. Home Sav. of Am.*,
  645F.Supp.1486, 1499 (E.D. Mo. 1986) ...................................................... 21

*Washington v. Wells Fargo Bank, Nat'l Ass'n*,
  2023 WL 415483 (M.D.N.C. Jan. 25, 2023) ................................................ 15

*WestLB AG v. BAC Fla. Bank*,
  912 F.Supp.2d 86 (S.D.N.Y. 2012) .............................................................. 15

*Whitaker v. Monroe Staffing Servs., LLC*,
  42 F.4th 200 (4th Cir. 2022) ........................................................................ 11


Statutes

18 U.S.C. § 1836(d) ............................................................................................ 5

18 U.S.C. § 1839(3)(B) ............................................................................... 21, 23

18 U.S.C. § 1839(5) .......................................................................................... 23

N.C. Gen. Stat. Ann. § 1-52(9) .......................................................................... 5

vi

N.C. Gen. Stat. § 75-16.2 ....................................................................................... 5

N.Y. Gen. Oblig. Law § 5-903 ............................................................................... 14

<u>Regulations</u>

Massachusetts Regulation 201 CMR 17.00....................................................... 13

<u>Other Sources</u>

Black's Law Dictionary ...................................................................................... 10

Fiserv Solutions, LLC ("Fiserv") and Fiserv, Inc. (collectively, "Defendants") submit this memorandum in support of their Motion to Dismiss Plaintiff's Original Complaint.

## NATURE OF THE MATTER BEFORE THE COURT

This is a contractual dispute between sophisticated parties. Self-Help is a large financial institution that acquired Winston-Salem Federal Credit Union ("WSFCU"). Fiserv is a technology provider that has provided products and services to WSFCU for decades without incident under a contract still in effect. After acquiring WSFCU, Self-Help no longer desired these services. Rather than pay the contractual exit and deconversion fees and amicably wind down the relationship, Self-Help manufactured a purported crisis and now seeks to litigate a putative "data breach" case without ever alleging an actual breach.

The Complaint asserts various claims concerning Fiserv's product security but does **not** allege any security incident or identify any product that purportedly fails to meet a contractual standard. Self-Help also impermissibly seeks duplicate recoveries in tort based on its defective contract claims. The entire Complaint should be dismissed.

## FACTUAL BACKGROUND

WSFCU has been a Fiserv client for over 20 years. In 2014, the parties extended their relationship through a Master Agreement under which Fiserv agreed to provide account processing and related services (as amended, the "Agreement"). (ECF No. 2

1

("Compl."), ¶ 18; ECF No. 15-1.)[1] WSFCU agreed to pay license, maintenance, and professional development fees and early termination fees if it terminated the Agreement other than for Fiserv's material breach. WSFCU also agreed to pay for deconversion services if Self-Help transitions to a new vendor.

On December 14, 2020, WSFCU contracted to receive new and additional account processing services through an amendment to the Agreement. (ECF No. 15-2 ("Amendment").) The Amendment has an 8-year term, which has not expired. (*Id.*, § 2.)

The Agreement is fully integrated and governed by New York law. (*Id.*, §§ 11(b), (d).) With its exhibits, the Agreement:

- reflects a comprehensive agreement delineating the parties' obligations, risk allocations, and liability limitations;

- includes specific warranties regarding Fiserv's products and services;

- expressly waives WSFCU's reliance on unincluded representations or warranties;

- includes WSFCU's representation that it verified the products meet its operational and regulatory needs; and

- defines in schedules and exhibits Fiserv's obligations concerning the performance, functionality, and security of the products and services.

(Agreement §§ 1, 6, 7, 11(b); Amendment § 3.)

Self-Help has over $2 billion in assets, 105,000 members, and 36 branches across ten states. (Compl., ¶ 15.) In December 2024, Self-Help announced a merger with

---

[1] Self-Help did not attach the Agreement to the Complaint but filed a copy in support of its Motion for TRO and Preliminary Injunction.

2

WSFCU,[2] effective January 1, 2025, (Compl., ¶ 18). After acquiring WSFCU, Self-Help no longer needed Fiserv's services and sought to terminate the Agreement without paying contractual fees. When Fiserv declined, Self-Help sent a November 24, 2025, demand letter alleging security issues with products WSFCU has been using for years. Self-Help does not and cannot allege it (or WSFCU) ever raised these purported issues before the demand letter.

As explained below, Self-Help mischaracterizes the Agreement and uses fatal non-specificity to evade dismissal. It has no viable claims. While Self-Help devotes pages to what ***could*** transpire if a data breach happened, it never alleges one did.

## QUESTIONS PRESENTED

1.    Whether Self-Help's claims are time barred?

2.    Whether Self-Help's breach-of-contract and equitable claims fail because the Complaint does not plausibly or correctly allege a contractual obligation Fiserv breached?

3.    Whether Self-Help's fraud claim fails due to the economic loss doctrine, a failure to plausibly allege reliance, and its failure to comply with Rule 9(b)?

4.    Whether Self-Help's Defend Trade Secrets Act claim can survive without plausible allegations of a trade secret or misappropriation?

---

[2] *See* https://www.self-help.org/who-we-are/resources/media-center/media-release/self-help-credit-union-winston-salem-federal-credit-union-announce-merger-effective-january-1 (merger announcement dated Dec. 17, 2024) (last accessed Dec. 30, 2025).

5.     Whether Self-Help's Chapter 75 claim can proceed as an impermissibly derivative breach of contract claim?

## ARGUMENT

A well-pleaded complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is only plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## I.     SELF-HELP'S CLAIMS ARE TIME BARRED.

Each of Self-Help's claims is time-barred. *See Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (court may dismiss on statute of limitations grounds "if the time bar is apparent on the face of the complaint.").

The parties signed the Agreement in 2014 and the Amendment in 2020, and Fiserv began providing the products and services to WSFCU thereafter. At best, Self-Help asserts that Fiserv's products and services do not comply with the contract and Self-Help overpaid for unspecified services. The limitations period began running when WSFCU began using those services and products. *MRE Tech. Sols. LLC v. Smiths Detection, Inc.*, 216 A.D.3d 430, 431 (N.Y. App. Div. 2023) (breach-of-contract claim accrues when the alleged conduct that caused the breach occurred). Self-Help cannot claim monthly invoicing creates a

4

continuing series of wrongs. *Henry v. Bank of Am.*, 147 A.D.3d 599, 601–02 (N.Y. App. Div. 2017). The Agreement imposes an enforceable two-year limitations period, barring Self-Help's claims. (Agreement § 7); *see Inc. Vill. of Saltaire v Zagata*, 280 A.D.2d 547 (N.Y. App. Div. 2001). Likewise, the Agreement's limitations period and the three-year statutory period bar Self-Help's unjust enrichment claim. *See Cody Creek Park, Inc. v. Capital One Servs., LLC*, 2017 WL 3172411, at *2 (M.D.N.C. 2017).

Self-Help seemingly alleges that WSFCU was fraudulently induced to enter the 2014 Agreement or 2020 Amendment. This claim is subject to a three-year limitations period. N.C. Gen. Stat. Ann. § 1-52(9); *Taylor v. Bank of Am., N.A.*, 898 S.E.2d 740, 745 (N.C. 2024). Self-Help cannot plausibly contend that any purported misrepresentation about Fiserv's services and products was not discoverable after WSFCU entered the Agreement or the Amendment. *See Taylor*, 898 S.E.2d at 745 (plaintiff cannot "close his eyes to facts observable by ordinary attention and thereby toll the statute of limitations indefinitely.").

Self-Help's DTSA and Chapter 75 claims are based on the same alleged misrepresentations that purportedly induced WSFCU to enter the Agreement and Amendment and provide its "trade secrets" to Fiserv. They, too, are time-barred. 18 U.S.C. § 1836(d) (three year); N.C.G.S. §75-16.2 (four year); *Lawley v. Liberty Mut. Grp., Inc.*, 2012 WL 4513622, at *7 (W.D.N.C. Sept. 28, 2012) (dismissing UDTPA claim as time-barred).

5

## II.    SELF-HELP HAS NOT PLAUSIBLY ALLEGED BREACH OF ANY CONTRACTUAL OR QUASI-CONTRACTUAL OBLIGATION.

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019). Rule 8 requires that Self-Help provide a plausible factual description of how Fiserv's performance failed to meet contractual requirements. *See ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211-12 (4th Cir. 2019). Self-Help cannot evade dismissal by not identifying the contractual obligations that Fiserv supposedly breached. *Brainbuilders LLC v. EmblemHealth, Inc.*, 2022 WL 3156179, at *7 (S.D.N.Y. Aug. 8, 2022).

### A.    The Complaint Disregards the Agreement's Schedules and Exhibits and Does Not Allege That Fiserv Failed to Perform Its Obligations for Any Particular Product or Service.

Fiserv agreed to provide the services and products "described in the attached Exhibits, subject to the terms set forth in this Agreement and in the applicable Exhibit." (Agreement, § 1.) Through the Amendment, Fiserv and Self-Help agreed to ***19 separate schedules and exhibits***. These schedules and exhibits define Fiserv's performance obligations, including, where applicable, the security features and authentication processes Fiserv would provide, or that Self-Help declined. For example:

- In the Digital Online Banking Services Schedule that governs online and mobile banking services, WSFCU was offered (but declined to purchase) Fiserv's SecureNow Service, which provides multi-factor authentication ("MFA") through one-time passcodes. (Amendment, p. 39, § 3(b).)

6

- In the Web Signatures for Credit Union Services Schedule, Fiserv agreed to use the "Authentication Measures" that WSFCU selected and disclaimed any representation or warranty regarding the appropriateness of WSFCU's chosen "Authentication Measures." (*Id.*, p. 77, § 1(c)(iii).)

- In the CheckFree Bill Payment and Delivery Service Schedule, WSFCU agreed "Fiserv is in no way responsible for authenticating Customer credentials for access to the Services." (*Id.*, p. 13, § 1(a)(iv).)

The point is the parties' rights and obligations related to a specific product or service are governed by an applicable schedule or exhibit. Whether Fiserv was required to provide specific security features for a particular product or service depends on what the Amendment (and incorporated schedules and exhibits) provide. That was the parties' bargain.

Self-Help ignores this. The Complaint fails to identify a specific product or service or any corresponding contractual obligation. Instead, Self-Help blithely alleges that "at least one system" lacked "any MFA or email passcode" and "others" relied on email passcodes as a form of authentication. (Compl., ¶¶ 3, 29, 30, 52.) The Complaint does not cite a single provision requiring a specific type of MFA or any other form of security. Self-Help does not identify these services or the nature and source of the security features that Self-Help claims Fiserv must, but allegedly failed to, provide.

This "hide-the-ball" approach (undoubtedly motivated by Self-Help's TRO strategy) is antithetical to Rule 8 and irreconcilable with *Twombly*'s plausibility standard. Self-Help's strategic omissions mandate dismissal. *See Sports Med Props., LLC v. Talib*, 2019 WL 3403372, at *3 (W.D.N.C. July 26, 2019) (dismissing of breach-of-contract claim

for failure to "sufficiently allege[] any facts or omissions as they relate to the Services contracted for").

**B.      Self-Help's Reliance on Sections 3 and 4 of the Agreement Is Irreconcilable with the Agreement's Plain Language.**

Unwilling to address specific obligations in the Agreement's schedules and exhibits, Self-Help attempts to supplant them by extracting non-existent standards from an inapplicable confidentiality provision (Section 3) and a general provision requiring Fiserv to have an information security program (Section 4). Self-Help's attempt to cobble "claims" from these provisions contravenes their plain language. Section 3 is a standard confidentiality and non-disclosure provision that has nothing to do with MFA, one-time passcodes, or data security. Section 4 merely requires Fiserv to have an "information security program," which Self-Help does not allege Fiserv lacks. That Self-Help may not like Fiserv's program does not state a breach claim.

**1.      Self-Help Cannot State a Claim Under Section 3 of the Agreement.**

Self-Help alleges that Section 3 – entitled "Confidentiality and Ownership" – requires Fiserv to implement security features for the products and services it provides to Self-Help that are equivalent to those Fiserv uses for its internal systems. (Compl., ¶¶ 1–3, 21–23.) There are many flaws with this argument.

<u>First</u>, Self-Help relies on language that does not appear in Section 3, inaccurately claiming that "Section 3(b) of the Master Agreement requires Fiserv to 'use the same care and discretion to prevent ***unauthorized*** disclosure of Information as it uses with its own

8

similar information that it does not wish disclosed.'" (*Id.*, ¶ 21(a) (emphasis added).) The word "unauthorized" does not actually appear in Section 3(b).

Second, the plain language, structure, and obvious intent of Section 3(b), which is an ordinary, ***mutual*** confidentiality and non-disclosure agreement, undercut Self-Help's argument. Section 3 generically defines the terms "Discloser" – the entity providing confidential information – and "Recipient" – the entity receiving confidential information. Section 3(b) does not impose confidentiality obligations only on "Fiserv," but equally on any "Recipient" of "Information":

> Recipient agrees to hold as confidential all Information it receives from the Discloser. All Information shall remain the property of Discloser or its suppliers and licensors. Recipient will use the same care and discretion to avoid disclosure of Information as it uses with its own similar information that it does not wish disclosed, but in no event less than a reasonable standard of care and no less than is required by law. Recipient may only use Information for the lawful purposes contemplated by this Agreement….

(Agreement, § 3(b).)

Section 3(b) defines what uses are permitted, third parties to whom Information may be disclosed, and what happens to Information at the end of the Agreement. Section 3(b) does ***not*** discuss information security, MFA, token-generated codes, biometrics, or layered authentication. Other Agreement provisions expressly address "Information Security;" indeed, that is the title of Section 4 (discussed below).

Section 3(b)'s plain language simply does not address the security features of the products and services Fiserv provides. The Court should apply this plain and unambiguous

9

language, *Piccirilli v. Yonaty*, 204 A.D.3d 1322, 1323 (N.Y. App. Div. 2022), and disregard allegations that contradict this plain language. *Davis v. Univ. of N. Carolina at Greensboro*, 2022 WL 3586093, at *8 (M.D.N.C. Aug. 22, 2022).

Self-Help's construction would also lead to absurd results. As noted above, Section 3(b)'s requirements are mutual. Fiserv is a Fortune 500 company with thousands of employees that provides a plethora of fintech services to a wide variety of customers around the world. WSFCU, on the other hand, was a small regional credit union. The idea that these two entities would need or want the "same" security features is specious. The idea that, had that been their intent, this arrangement would be buried in a single sentence of a confidentiality provision, even more so. And in that (incredible) case, there would be no need for other provisions regarding information security or the particular security features for specific products, yet such provisions indisputably exist. Courts should not interpret contracts in a manner that would produce "absurd" or "commercially unreasonable" results. *Cole v. Macklowe*, 99 A.D.3d 595, 596 (N.Y. App. Div. 2012).

Self-Help's skewed interpretation would transform a straightforward non-disclosure provision into an obligation to prevent unauthorized access by third parties. "Disclosure" and "access" mean different things. *Compare* DISCLOSURE, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The act or process of making known something that was previously unknown; a revelation of facts <a lawyer's disclosure of a conflict of interest>.") *with* ACCESS, *id.* ("A right, opportunity, or ability to enter, approach, pass to and from, or communicate with <access to the courts>."). Courts frequently distinguish between

10

"disclosure" and "access" in, *inter alia*, cases involving the Computer Fraud and Abuse Act,[3] privacy statutes,[4] and contracts.[5] Giving the term "disclosure" its plain meaning, *Meda AB v. 3M Co.*, 969 F.Supp.2d 360, 379 (S.D.N.Y. 2013) (undefined terms are given their "ordinary meaning"); *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 210 (4th Cir. 2022), Section 3(b) does not obligate Fiserv to prevent unauthorized **access** to Self-Help's data, much less the infeasible obligation to "replicate" Fiserv's own security environment for Self-Help.

    Finally, in inviting the Court to interpret a general contractual provision about "Confidentiality and Ownership" to override the specific product features and contractual obligations in the Agreement's 19 schedules and exhibits, Self-Help violates the interpretive canon that specific language in a contract prevails over general language. *In re AMR Corp.*, 730 F.3d 88, 99 (2d Cir. 2013) ("Under New York law, 'a specific provision…governs the circumstance to which it is directed, even in the face of a more general provision.'").

---

[3] *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F.Supp.2d 479, 499 (D. Md. 2005) (The CFAA "do[es] not prohibit the unauthorized disclosure or use of information, but rather unauthorized access.").

[4] *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 858 (N.Y. Sup. Ct. 2015) ( "the theft of the subject data cannot constitute a disclosure of said information).

[5] *Dauphin v. Crownbrook ACC LLC*, 2014 WL 2002822, at *7 (E.D.N.Y. May 15, 2014) (dismissing claim based on obligation not to "use, divulge, disclose or make accessible" confidential information where no evidence that defendant "used or disclosed" information).

11

### 2. Self-Help Cannot State a Claim Under Section 4 of the Agreement.

Self-Help alleges Fiserv breached Section 4(a) by "failing to implement an information security program that appropriately protects the security and confidentiality of Self-Help's information." (Compl., ¶ 82(b).) Self-Help does not allege that Fiserv lacks an information security program, or that there was (ever) any data breach or unauthorized access of Self-Help's information.[6] Self-Help's claim rests on its conjectural belief that Fiserv's information security program is not "appropriate" to protect its information.

That does not state a breach claim. The crux of Fiserv's obligations are in the first sentence of Section 4(a):

> Fiserv has implemented and shall maintain an information security program **that is designed to meet the following objectives**: (i) protect the security and confidentiality of customer information (as defined in GLB); (ii) protect against any anticipated threats or hazards to the security or integrity of such information; (iii) protect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to any customer; and (iv) ensure the proper disposal of "consumer information" (information obtained from "consumer reports" as defined in the Fair Credit Reporting Act.

(Agreement, §4(a) (emphasis added).)

Self-Help makes no factual allegations about how Fiserv supposedly breached Section 4(a). The Complaint says only that Fiserv's information security program does not

---

[6] In the Agreement, Self-Help "agrees that it shall notify Fiserv as soon as possible upon becoming aware of any incident or unauthorized access to any Information on the Fiserv System." (ASP Services Exhibit, Section 5(b).) Self-Help has never provided such notice to Fiserv and does not allege otherwise.

12

"appropriately" protect Self-Help's information but offers no standard (other than Self-Help's subjective view) as to what is "appropriate." To the extent Self-Help bases this claim on the notion that Fiserv must replicate its security environment for Self-Help, the claim fails as explained above. To the extent Self-Help asserts that "NIST" guidelines and undefined "federal regulatory guidance" control, nothing in Section 4 mentions, much less incorporates, those standards.[7]

Section 4 contemplates that unauthorized access could occur notwithstanding a robust information security program. Section 4(a) requires that Fiserv "take appropriate actions to address incidents of unauthorized access to Client's 'sensitive customer information' (as defined in GLB), including notification to Client as soon as possible of any such incident." (Agreement, § 4(a).) So, even if there had been unauthorized access to Self-Help's information (something Self-Help does not allege) that alone would not breach Section 4.

A data breach cannot alone plausibly demonstrate inadequate security controls, *In re Block, Inc. Sec. Litig.*, 2025 WL 2607890, at *7 (S.D.N.Y. Sept. 9, 2025), but Self-Help does not even allege that much. Instead, Self-Help speculates about the risk an incident might happen in the future. (*Id.* ¶¶ 65–77.) Self-Help's conclusory allegations of breach

---

[7] Notably, in Section 4(a), Fiserv did agree to "use security safeguards for all personal information pertaining to Massachusetts residents in accordance with Massachusetts Regulation 201 CMR 17.00." (Agreement, § 4(a).) Under the interpretive canon *expressio unius est exclusion alterious*, the reference to this standard, but no others, makes clear the parties did not intend to incorporate other third-party standards into Section 4. *Gillen v. Town of Hempstead Town Bd.*, 63 Misc.3d 653, 658 (N.Y. Sup. Ct. 2019) ("[W]hen one or more things of a class are expressly mentioned others of the same class are excluded.").

and speculative harm do not state a claim. *See Stuart v. Kyocera AVX Components Corp.*, 769 F.Supp.3d 476, 487 n.7 (D.S.C. 2025) (rejecting "conclusory allegation that Defendant does not have 'adequate safeguards' to protect Plaintiffs' PII."). Self-Help has not plausibly alleged a breach of Section 4 either.[8]

### C. Self-Help's Assertions about N.Y General Obligation Law § 5-903 Are Facially Invalid.

Self-Help alleges Fiserv violated N.Y. General Obligations Law § 5-903 by effectuating "an automatic renewal of the Agreement without providing the required personal or certified mail notice to Self-Help beforehand." (Compl., ¶ 82(c).) This is a remarkable allegation given no automatic renewal has occurred. The 2020 Amendment established an eight-year term that has not expired. (Amendment, p. 1, § 2(b).). The "automatic renewal" claim is thus frivolous.[9]

### D. Self-Help's Unjust Enrichment Claim and Request for Equitable Remedies Fall With Its Contract Claims.

Self-Help's failure to plead a contract claim precludes its unjust enrichment claim and its requests for equitable *remedies*, which first require a viable claim.

---

[8] Self-Help's failure to plead a contract claim also precludes its belt-and-suspenders "good faith and fair dealing" claim. A "claim for breach of the implied covenant of good faith and fair dealing will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant or an express provision of the underlying contract." *Boart Longyear Ltd. v. All. Indus., Inc.*, 869 F.Supp.2d 407, 413 (S.D.N.Y. 2012) (cleaned up).

[9] Moreover, this statute applies only to contracts involving "service or repair to or for *any real or personal property*." N.Y. Gen. Oblig. Law § 5-903(2) (emphasis added). It does not extend to administrative services and commercial contracts like that here. *See Trustpilot Damages LLC v. Trustpilot Inc.*, 2022 WL 2124865, at *3 (2d Cir. June 13, 2022) (data service contract); *Trepp, LLC v. McCord Dev., Inc.*, 100 A.D.3d 510 (N.Y. App. Div. 2012) (financial analytics contract).

Unjust enrichment is an equitable remedy based on an implied contract. *Washington v. Wells Fargo Bank, Nat'l Ass'n*, 2023 WL 415483, at \*4 (M.D.N.C. Jan. 25, 2023). An express contract governing the parties' obligations bars an unjust enrichment claim. *Velocitor Sols., LLC v. ASA Coll., Inc*., 2022 WL 18135189, at \*11 (M.D.N.C. Oct. 12, 2022). Self-Help alleges the Agreement, which "constitutes the complete and exclusive statement of the agreement between the parties" (Agreement, § 11(b)), is valid and binding. (Compl., ¶¶ 79, 92.) The unjust enrichment claim thus fails.

Recission and specific performance are unavailable without a plausibly pleaded breach-of-contract claim. *WestLB AG v. BAC Fla. Bank*, 912 F.Supp.2d 86, 94 (S.D.N.Y. 2012) (specific performance); *Cherokee Owners Corp. v. DNA Contracting, LLC*, 96 A.D.3d 480, 481 (N.Y. App. Div. 2012) (rescission). Moreover, neither remedy is appropriate where there is an adequate remedy at law. *T.F. Demilo Corp. v. E.K. Const. Co.*, 207 A.D.2d 480, 481 (N.Y. App. Div. 1994) (specific performance); *Romanoff v. Romanoff*, 148 A.D.3d 614, 616 (N.Y. App. Div. 2017) (rescission). Here, Self-Help alleges financial loss, (Compl., ¶ 32), conceding the adequacy of money damages.

For the same reason, the Court should reject Self's Help requests for declaratory relief. Without a viable claim, exculpation and limitations of liability are not ripe. Self-Help has not pleaded any past or imminent "auto-renewal," and the current term is years from expiration. As to early termination, Self-Help has not asked to terminate for convenience (and presumably would never candidly reveal that as its real goal). Nor has Self-Help pleaded any reason it should not be required to pay for deconversion services to

15

facilitate its transition to a new vendor. That Self-Help would like preemptory and advisory rulings on all contractual terms it dislikes (but indisputably agreed to) is insufficient to merit a declaratory judgment action. *See Velez v. Bank of New York Mellon Tr. Co. N.A.*, 2012 WL 5305508, at *5 (E.D. Va. Oct. 23, 2012) (dismissing conclusory claims that obligations were unenforceable). This is particularly true where Self-Help ignored the Agreement's mandatory dispute resolution process before filing suit.

## III. SELF-HELP'S FRAUD CLAIM FAILS AS A MATTER OF LAW.

Although the Complaint is not a model of clarity, Self-Help apparently tries to plead two fraud theories—fraud and fraudulent inducement. (Compl., ¶¶ 122-130.) The two claims have identical elements. *Hale v. MacLeod*, 904 S.E.2d 142, 150 (N.C. App. 2024). A plaintiff must allege: "(1) [a] false representation or concealment of material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; [and] (5) [that] result[s] in damage to the injured party." *Comer v. Pers. Auto Sales, Inc.*, 368 F.Supp.2d 478, 485 (M.D.N.C. 2005).

Self-Help's fraud claim fails under either iteration. ***First***, the claim simply repackages Self-Help's contract claim and is therefore barred by the economic loss doctrine. ***Second***, Self-Help has not plausibly pleaded reliance or damages. The only "reliance" or "harm" Self-Help alleges necessarily would have occurred (if at all) ***before***

16

the alleged fraudulent conduct. The alleged chronology and the consequent lack of causation preclude Self-Help's claim.[10]

### A. Self-Help's Fraud Claim Alleges Only that Fiserv Failed to Perform Contractual Promises and Is Barred by Economic Loss Doctrine.

"The economic loss doctrine 'prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law.'" *Superior Performers, Inc. v. Thornton*, 2021 WL 2156960, at *7 (M.D.N.C. May 27, 2021). The doctrine applies to fraud claims based entirely on alleged failures "to carry out a promise in contract." *Strum v. Exxon Co., USA*, 15 F.3d 327, 331 (4th Cir. 1994).

Self-Help's fraud claims purportedly arise out of alleged misrepresentations from three sources:

- A "compliance package" stating or suggesting: (i) Fiserv's "policies and standards" complied with "accepted control standards, frameworks, and industry standards" and were consistent with [NIST's] Cyber Security Framework; and (ii) Fiserv utilized multi-factor authentication.

- A *Fiserv Cybersecurity Fact Sheet 2025* stating Fiserv's cybersecurity policies were: (i) "based on authoritative sources that include regulatory and industry publications such as NIST's Cyber Security Framework"; and (ii) "designed to meet applicable industry and regulatory requirements."

- A publicly available "Privacy Notice" stating Fiserv has "in place appropriate security measures to prevent…personal data from being lost, used or accessed in any unauthorized way, altered or disclosed."

---

[10] Self-Help also does not comply with Rule 9(b). *See McCauley v. Hospira, Inc.*, 2011 WL 3439145, at *5 (M.D.N.C. Aug. 5, 2011). Although Self-Help purports to identify certain misrepresentations, it does not identify the date such statements were made nor the "identity of each person making the misrepresentations"—instead blanketly attributing each to the Fiserv entities more broadly. These conclusory allegations fail under Rule 9(b). *United Guar. Residential Ins. Co. of N. Carolina v. Countrywide Fin. Corp.*, 2010 WL 11541968, at *8 (M.D.N.C. Sept. 2, 2010).

17

(Compl., ¶¶ 45-54, 56-57.)

Self-Help contends these statements were fraudulent because Fiserv allegedly does not "comply with accepted control standards, frameworks, and industry practices" or "have appropriate security measures in place to prevent Self-Help's data from being used or accessed in an unauthorized way." (*Id.*, ¶¶ 50, 58.) Put differently, Self-Help contends Fiserv's alleged failure to provide security measures Self-Help deems "appropriate" made these statements "fraudulent."[11]

In the Complaint, however, Self-Help alleges that Fiserv's failure to provide those ***very same*** security controls constitutes a breach the Agreement. (*Id.*, ¶¶ 21-32, 79-98.) Indeed, Self-Help uses nearly verbatim language to describe Fiserv's alleged obligations under the Agreement. (*See id.* ¶ 80 ("Fiserv [] was obligated…to provide security appropriate for a federally regulated credit union that stores extraordinarily sensitive consumer financial information."); ¶ 82(b) (describing breach as "fail[ure] to implement and maintain an information security program that appropriately protects the security and confidentiality of Self-Help's information."); ¶ 88 ("Self-Help may have the Master Agreement rescinded because Fiserv misrepresented to Self-Help the existence and nature of Fiserv's security controls."); ¶¶ 95-96 (requesting Fiserv specifically perform by "deploying phishing-resistant, possession-based MFA and other enhanced security[.]").)

---

[11] Given the posture of this motion under Rule 12(b)(6), Fiserv will not address here the threshold problem that Self-Help could never prove these statements, particularly when read in their full context, were false when made. For example, Fiserv indisputably uses MFA, and its security features are certainly "based on" and "designed to meet" applicable regulatory and industry standards, all of which Fiserv believes are "appropriate" measures for the applications and features provided to its clients.

18

Nearly a dozen paragraphs allege the Agreement requires Fiserv to provide "robust, high-assurance [security] measures," including those in what Self-Help characterizes as mandatory "[f]ederal standards and supervisory guidance." (*See id.*, ¶¶ 21-32.) At bottom, Self-Help contends Fiserv's alleged failure to provide these measures, and "misrepresentations" about the measures it does provide, give rise to Self-Help's contract claim. (*See id.*, ¶¶ 80, 82, 88, 95-96.)

These are the same "failures" and "misrepresentations" on which Self-Help bases its fraud claim. (*Id.*, ¶¶ 45-54, 56-57.) The fraud claim merely repackages Self-Help's contract claim and is therefore barred by the economic loss doctrine. *See Strum*, 15 F.3d at 331. Self-Help cannot avoid the doctrine merely by characterizing its claim as one for "fraudulent inducement." The "fraudulent inducement" exception to the economic loss doctrine applies only when the inducing statements were made ***before*** the contract's execution. *Lowe's Companies, Inc. v. Pac. Rsch. Grp.*, 2007 WL 1040481, at *2 (W.D.N.C. Mar. 29, 2007). Self-Help does not allege the misrepresentations were made before the parties entered the 2014 Agreement or the 2020 Amendment. Indeed, it is clear from the Complaint the "2025 Cybersecurity Update" came long after both.

### B. Self-Help Has Not Plausibly Pleaded Reliance.

Self-Help attempts – and fails – to plead reliance in two ways: (i) the pre-merger WSFCU entity "relied" on the alleged misrepresentations by "entering into the Master Agreement and other transactions with Fiserv," (Compl., ¶ 126); and (ii) the pre-merger Self-Help entity "relied" on the alleged misrepresentations in assessing the suitability of

19

merging with WSFCU, (*id.*, ¶ 127). Neither plausibly pleads reliance. *See Peter Marco, LLC v. Banc of Am. Merch. Servs., LLC*, 660 F.Supp.3d 453, 468 (W.D.N.C. 2023).

As to pre-merger WSFCU, Self-Help does not plead that any alleged misrepresentation occurred **before** WSFCU entered the 2014 Agreement or the 2020 Amendment (or that anyone at WSFCU saw these "representations" at any time, as Rule 9(b) mandates). Self-Help does not ascribe a date to the Fiserv "Compliance Package" or "Privacy Notice," and, therefore, does not plausibly plead that either occurred before the Agreement or the Amendment. (Compl., ¶¶ 45-52, 56-58.) And Self-Help alleges that Fiserv's "Cybersecurity Fact Sheet" was distributed in 2025, **eleven years** after the Agreement and **five years** after the Amendment. (*Id.*, ¶ 53.) Pre-merger WSFCU could not have "relied" on representations that were not yet made when it entered the Agreement or the Amendment.

Perhaps realizing this fatal flaw, Self-Help tries to allege it "relied" on these statements in determining whether to merge with WSFCU and claims Fiserv should have "known" that."[12] (*Id.*, ¶ 127.) That is certainly untrue for the 2025 Cybersecurity Fact Sheet since Self-Help announced the merger in 2024. As to the other "representations," there is no allegation anyone at Self-Help reviewed these documents (at all or for the merger) and no allegation that Self-Help communicated with Fiserv to confirm the statements in these documents remained accurate. A misrepresentation must be false when made, not some

---

[12] Self-Help does not allege Fiserv intended to induce the merger.

20

undefined later time when Self-Help (maybe) read these documents. *Childress v. Nordman*, 78 S.E.2d 757, 761 (N.C. 1953) ("[T]he truth or falsity of a representation is generally to be determined as of the time when it was made[.]"). And, even if Self-Help pleaded actual reliance (it did not), blind reliance on old publications without any effort to confirm them is not "reasonable." *Kumar v. Patel*, 2024 WL 849419, at *11 (N.C. Super. Feb. 28, 2024) ("Reliance is not reasonable if Plaintiffs fail to make any independent investigation as to the truth of the assertion.").

More importantly, as a successor-in-interest to WSFCU, Self-Help is charged with WSFCU's pre-merger knowledge and succeeds to WSFCU's rights and obligations as they existed at the time of the merger. *See Victor v. Home Sav. of Am.*, 645 F.Supp.1486, 1499 (E.D. Mo. 1986) ("This general rule applies as well to the transfer of knowledge between corporations."); *Cloer v. King Arthur Inc.*, 918 S.E.2d 479, 484 (N.C. Ct. App. 2025). Self-Help cannot use the merger to "refresh" old statements into "new" representations or create "reliance" where, as a matter chronology, there was none. Today's Self-Help can have no better claims than WSFCU did.

## IV.  SELF-HELP DOES NOT PLAUSIBLY PLEAD "TRADE SECRETS" OR "MISAPPROPRIATION."

To plead a DTSA claim, a plaintiff must allege that (i) it possessed a valid trade secret that (ii) the defendant misappropriated. *See Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025). To be a trade secret, information must derive independent economic value from its secrecy. 18 U.S.C. § 1839(3)(B). A plaintiff cannot rest on allegations that the information is "of value," but rather must plausibly plead "value

21

specifically tied to secrecy." *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 771 (4th Cir. 2023).

Self-Help perfunctorily alleges its members' and employees' identities and contact information and financial and transaction history constitute trade secrets. (Compl., ¶ 110.) But Self-Help does not and cannot allege how this information derives independent economic value from remaining secret. The contrary is true: The information Self-Help characterizes as a "trade secret" does not derive value from being kept secret; it is valuable **because** it can be shared with third parties (*e.g.,* lenders, credit reporting agencies, etc.) to establish, *e.g.*, that an individual consumer is not a credit risk. *Cf. Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F.Supp.3d 1070, 1087 (D. Colo. 2018).

The same is true of the alleged "identities and contact information" of Self-Help's members and employees. (Compl., ¶ 110.) A basic list of names and contact information is not alone a trade secret. *See UBS Painwebber, Inc. v. Aiken*, 197 F.Supp.2d 436, 447 (W.D.N.C. 2002) ("[A] list of customer names and addresses is not a 'trade secret'" under N.C. Trade Secrets Act with analogous definition of "trade secret"); *Aira Jewels, LLC v. Mondrian Collection, LLC*, 2024 WL 1255798, at *5 (S.D.N.Y. Mar. 25, 2024) (holding customer lists are not trade secrets "if they are little more than a compilation of publicly available information, such as contact information").

Self-Help recites at length the harm that might befall a person if their name, contact information, financial history, and transactions were accessed by a bad actor. (Compl., ¶¶ 65-77.) That misses the point and conflates whether a person may suffer harm if

22

information is improperly accessed with the proper inquiry under the DTSA: Whether ***Self-Help*** realizes independent economic value specifically because member and employee information is kept secret. 18 U.S.C. § 1839(3)(B); *Synopsys, Inc.*, 70 F.4th at 771. Self-Help does not (and cannot) allege the latter, and thus has not alleged a trade secret.

Self-Help also fails to plausibly plead misappropriation. To "misappropriate" under the DTSA, a party must either disclose or use a trade secret without consent, or acquire a trade secret through "improper means." 18 U.S.C. § 1839(5). The lawful acquisition of information in a commercial relationship does not constitute acquisition by "improper means." *Sysco Mach. Corp.*, 143 F.4th at 230. And, in pleading misappropriation, courts in this Circuit "insist upon some specificity…because it is the type of claim that has the potential to seriously disrupt ordinary business relationships." *Id.* Self-Help provides no such specificity.

Self-Help does not allege Fiserv disclosed its "trade secrets." Revisiting the fundamental flaw in the Complaint—Self-Help does not allege that ***anything happened*** to its information. Rather, Self-Help's misappropriation theory is premised on a single, conclusory allegation that Fiserv acquired Self-Help's trade secrets "through improper means, including by misrepresenting to Self-Help the existence and nature of Fiserv's security controls." (Compl., ¶ 116.) That nonsensical conclusion is implausible. Self-Help has been a Fiserv client for decades, and the parties have shared information under the Agreement as a part of their ongoing commercial relationship. Indeed, that is what Section 3(b) contemplates. Self-Help alleges only that Fiserv possesses Self-Help's information as

23

part of its performance under the Agreement. Self-Help has not alleged receipt by "improper means" or any misappropriation, much less with the requisite particularity.

## V. SELF-HELP'S CHAPTER 75 CLAIM FAILS AS A SIMPLE REHASH OF ITS BREACH OF CONTRACT CLAIM.

A "mere" breach of contract, even if intentional, does not trigger liability under Chapter 75. *See Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012) ("North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and allege UDTP out of facts that are properly alleged as [a] breach of contract claim."). A breach of contract cannot support a Chapter 75 claim unless plaintiff shows "substantial aggravating circumstances attending the breach." *Id.*

Confined to a single, conclusory paragraph, the "factual" allegations for Self-Help's Chapter 75 claim are indistinguishable from those supporting Self-Help's contract claim. (Compl., ¶ 133 (asserting Fiserv failed to (i) implement "reasonable and appropriate security measures"; (ii) "follow industry standards and regulatory guidelines for data security"; and (iii) "comply with its own policies, notices, and agreements").) These allegations (again) describe the contractual obligations Self-Help contends Fiserv breached. Nowhere does Self-Help allege "substantial aggravating circumstances" attendant to the alleged breaches. Consequently, Self-Help has not pleaded a Chapter 75 claim. *See Post v. Avita Drugs, LLC*, 2017 WL 4582151, at *5 (N.C. Super. Oct. 11, 2017) (dismissing Chapter 75 claim where the case turned on "determining whether the parties properly fulfilled their contractual duties").

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims in the Complaint.

Respectfully submitted on December 30, 2025

**FOLEY & LARDNER LLP**

*/s/  Joseph S. Dowdy*
Joseph S. Dowdy
N.C. State Bar No. 31941
5000 Centregreen Way, Suite 500
Cary, NC 27513
Phone: (984) 375-3033
Email: joe.dowdy@foley.com

*Counsel for Defendants Fiserv Solutions, LLC and Fiserv, Inc.*

**OF COUNSEL**
Andrew J. Wronski
Bryan B. House
Timothy J. Patterson
Jesse Byam-Katzman
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Phone:  (414) 271-2400

25

**CERTIFICATE OF WORD COUNT**

The undersigned, counsel of record for Fiserv, certifies that this brief contains 6159 words, which complies with the word limit of L.R. 7.3.

Respectfully submitted on December 30, 2025

/s/ Joseph S. Dowdy
Joseph S. Dowdy
N.C. State Bar 31941
Foley & Lardner LLP

## CERTIFICATE OF SERVICE

I hereby certify that I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF System, which will automatically serve notice of such filing to the following registered PACER users in the case:

Charles Nerko (cnerko@nerko.com)
Walter E. Swearingen (wswearingen@nerko.com)
Nerko PLLC
1178 Broadway, 3rd Floor
New York, NY 10001

Mark S. Pincus (mark@gardnerskelton.com)
Gardner Skelton PLLC
3746 N. Davidson Street
Charlotte, NC 28205

Respectfully submitted on December 30, 2025

*/s/ Joseph S. Dowdy*
Joseph S. Dowdy
N.C. State Bar 31941
Foley & Lardner LLP