<p style="text-align:center">**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**</p>

| | |
|---|---|
| SELF-HELP CREDIT UNION, as successor in interest to WINSTON-SALEM FEDERAL CREDIT UNION,<br><br>       Plaintiff,<br><br>v.<br><br>FISERV SOLUTIONS, LLC f/k/a FISERV SOLUTIONS, INC. and FISERV, INC.,<br><br>       Defendants. | Case No. 1:25-cv-01112-TDS-LPA |

<p style="text-align:center">**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**</p>

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................................iii

NATURE OF THE MATTER BEFORE THE COURT ..................................................... 1

FACTUAL BACKGROUND.............................................................................................. 2

QUESTIONS PRESENTED ............................................................................................... 3

ARGUMENT...................................................................................................................... 3

    I.    SELF-HELP'S CLAIMS ARE TIME BARRED. ....................................... 4

    II.    SELF-HELP HAS NOT PLAUSIBLY ALLEGED BREACH OF
    ANY CONTRACTUAL OR QUASI-CONTRACTUAL
    OBLIGATION. ............................................................................................. 6

        A.    The FAC Ignores the Agreement's Schedules and Exhibits
        and Does Not Allege a Breach as to Any Particular Product or
        Service. .............................................................................................. 7

        B.    Self-Help's Reliance on Sections 3 and 4 of the Agreement Is
        Irreconcilable with Their Plain Language. ........................................ 8

            1.    Self-Help Cannot State a Claim Under Section 3. .................. 8

            2.    Self-Help Cannot State a Claim Under Section 4. ................. 11

        C.    Self-Help's New Complaint About Upgrades to Enhanced
        Authentication Does Not State a Claim. .......................................... 12

        D.    Audit Documents.............................................................................. 13

        E.    The Agreement's Unexpired Term Precludes Any Claim
        Under N.Y General Obligation Law § 5-903. ................................. 14

        F.    Self-Help's Claims for Unjust Enrichment and Equitable
        Remedies Fall With Its Contract Claims. ........................................ 14

    III.    SELF-HELP'S FRAUD CLAIMS FAIL AS A MATTER OF LAW........... 16

i

   A.  Self-Help's Fraud Claim Is Barred by Economic Loss Doctrine. ................................................................................ 16

   B.  Self-Help's New Fraudulent Inducement Theory Fails. .................. 18

   C.  Self-Help's Allegations Preclude a Plausible Allegation of Reliance. ................................................................................. 20

 IV. SELF-HELP DOES NOT PLAUSIBLY PLEAD "TRADE SECRETS" OR "MISAPPROPRIATION." .............................................. 22

 V. SELF-HELP'S CHAPTER 75 CLAIM FAILS. ........................................ 24

CONCLUSION ................................................................................................ 25

CERTIFICATE OF WORD COUNT ............................................................... 26

CERTIFICATE OF SERVICE .......................................................................... 27

<div align="center">ii</div>

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015)................................................................. 10

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
917 F.3d 206 (4th Cir. 2019)..................................................................................6

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
36 N.E.3d 623 (N.Y. 2015)....................................................................................5

*Aira Jewels, LLC v. Mondrian Collection, LLC*,
2024 WL 1255798 (S.D.N.Y. Mar. 25, 2024).....................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................3

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
353 F.Supp.3d 1070 (D. Colo. 2018)...................................................................23

*Birtha v. Stonemor, N.C., LLC*,
727 S.E.2d 1 (N.C. Ct. App. 2012).......................................................................24

*Boart Longyear Ltd. v. All. Indus., Inc.*,
869 F.Supp.2d 407 (S.D.N.Y. 2012).....................................................................12

*Brainbuilders LLC v. EmblemHealth, Inc.*,
2022 WL 3156179 (S.D.N.Y. Aug. 8, 2022) .........................................................6

*Cherokee Owners Corp. v. DNA Contracting, LLC*,
96 A.D.3d 480 (N.Y. App. Div. 2012) .................................................................15

*Childress v. Nordman*,
78 S.E.2d 757 (N.C. 1953) ...................................................................................21

*Cloer v. King Arthur Inc.*,
918 S.E.2d 479 (N.C. Ct. App. 2025)...................................................................22

iii

*Cody Creek Park, Inc. v. Capital One Servs., LLC*,
2017 WL 3172411 (M.D.N.C. July 25, 2017)................................................................4

*Cole v. Macklowe*,
99 A.D.3d 595 (N.Y. App. Div. 2012) ................................................................9, 10

*Comer v. Pers. Auto Sales, Inc.*,
368 F.Supp.2d 478 (M.D.N.C. 2005) .......................................................................16

*Cross v. Formativ Health Mgmt., Inc.*,
439 F.Supp.3d 616 (E.D.N.C. 2020) ........................................................................20

*Dalton v. Dalton*,
596 S.E.2d 331 (N.C. 2004) .....................................................................................20

*Dauphin v. Crownbrook ACC LLC*,
2014 WL 2002822 (E.D.N.Y. May 15, 2014) ..........................................................10

*Davis v. Univ. of N.C. at Greensboro*,
2022 WL 3586093 (M.D.N.C. Aug. 22, 2022)............................................................9

*Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*,
527 F.Supp.3d 790 (E.D.N.C. 2019) ........................................................................19

*Further Festivals, LLC v. Etix, Inc.*,
2024 WL 1546919 (E.D.N.C. Apr. 9, 2024)..............................................................19

*Georgion v. Bank of Am., N.A.*,
2025 WL 2388779 (W.D.N.C. Aug. 18, 2025)........................................................6, 7

*Gillen v. Town of Hempstead Town Bd.*,
63 Misc.3d 653 (N.Y. Sup. Ct. 2019) .......................................................................11

*Hale v. MacLeod*,
904 S.E.2d 142 (N.C. App. 2024)........................................................................16, 19

*In re AMR Corp.*,
730 F.3d 88 (2d Cir. 2013)........................................................................................11

*In re Block, Inc. Sec. Litig.*,
2025 WL 2607890 (S.D.N.Y. Sept. 9, 2025).............................................................12

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*,
390 F.Supp.2d 479 (D. Md. 2005)............................................................................10

iv

*Kumar v. Patel*,
2024 WL 849419 (N.C. Super. Feb. 28, 2024) ................................................................. 21

*Lockerby v. Cross Point NC Partners, LLC*,
2023 WL 4918359 (W.D.N.C. Aug. 1, 2023) .................................................................... 5

*McCauley v. Hospira, Inc.*,
2011 WL 3439145 (M.D.N.C. Aug. 5, 2011) .................................................................. 16

*Meda AB v. 3M Co.*,
969 F.Supp.2d 360 (S.D.N.Y. 2013) .............................................................................. 10

*MRE Tech. Sols. LLC v. Smiths Detection, Inc.*,
216 A.D.3d 430 (N.Y. App. Div. 2023) ........................................................................ 4, 6

*Network Apps, LLC v. AT&T Mobility LLC*,
778 F.Supp.3d 610 (S.D.N.Y. 2025) ................................................................................ 6

*Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*,
909 F.3d 655 (4th Cir. 2018) ........................................................................................... 4

*Peter Marco, LLC v. Banc of Am. Merch. Servs., LLC*,
660 F.Supp.3d 453 (W.D.N.C. 2023) ............................................................................ 21

*Piccirilli v. Yonaty*,
204 A.D.3d 1322 (N.Y. App. Div. 2022) ......................................................................... 9

*Post v. Avita Drugs, LLC*,
2017 WL 4582151 (N.C. Super. Oct. 11, 2017) ............................................................ 24

*Prompt Mortg. Providers of N. Am., LLC v. Zarour*,
155 A.D.3d 912 (N.Y. App. Div. 2017) ........................................................................... 5

*Ragsdale v. Kennedy*,
209 S.E.2d 494 (N.C. 1974) ........................................................................................... 19

*Romanoff v. Romanoff*,
148 A.D.3d 614 (N.Y. App. Div. 2017) ......................................................................... 15

*Schmidt v. McKay*,
555 F.2d 30 (2d Cir. 1977) ............................................................................................. 14

*SciGrip, Inc. v. Osae*,
838 S.E.2d 334 (N.C. 2020) ............................................................................................. 4

v

*Strum v. Exxon Co., USA*,
15 F.3d 327 (4th Cir. 1994)...................................................................................16, 18

*Stuart v. Kyocera AVX Components Corp.*,
769 F.Supp.3d 476 (D.S.C. 2025)................................................................................ 12

*Superior Performers, Inc. v. Thornton*,
2021 WL 2156960 (M.D.N.C. May 27, 2021) ............................................................ 16

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
70 F.4th 759 (4th Cir. 2023) .................................................................................22, 23

*Sysco Mach. Corp. v. DCS USA Corp.*,
143 F.4th 222 (4th Cir. 2025) ...............................................................................22, 23

*T.F. Demilo Corp. v. E.K. Const. Co.*,
207 A.D.2d 480 (N.Y. App. Div. 1994) ...................................................................... 15

*Taylor v. Bank of Am., N.A.*,
898 S.E.2d 740 (N.C. 2024) ....................................................................................4, 5

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*,
203 F.Supp.3d 608 (M.D.N.C. 2016) ........................................................................... 6

*UBS Painewebber, Inc. v. Aiken*,
197 F.Supp.2d 436 (W.D.N.C. 2002) ......................................................................... 22

*United Guar. Residential Ins. Co. of N. Carolina v. Countrywide Fin. Corp.*,
2010 WL 11541968 (M.D.N.C. Sept. 2, 2010) ........................................................... 16

*Velez v. Bank of New York Mellon Tr. Co. N.A.*,
2012 WL 5305508 (E.D. Va. Oct. 23, 2012) .............................................................. 15

*Velocitor Sols., LLC v. ASA Coll., Inc.*,
2022 WL 18135189 (M.D.N.C. Oct. 12, 2022)........................................................... 15

*Victor v. Home Sav. of Am.*,
645 F.Supp. 1486 (E.D. Mo. 1986) ............................................................................ 22

*W. Inv. Foreign Shares, LLC v. McCollum*,
638 F.Supp.3d 595 (W.D.N.C. 2022) ........................................................................... 4

*Washington v. Wells Fargo Bank, Nat'l Ass'n*,
2023 WL 415483 (M.D.N.C. Jan. 25, 2023)............................................................... 14

*WestLB AG v. BAC Fla. Bank,*
   912 F.Supp.2d 86 (S.D.N.Y. 2012) ................................................................... 15

*Whitaker v. Monroe Staffing Servs., LLC,*
   42 F.4th 200 (4th Cir. 2022) ........................................................................... 10

**Statutes**

15 U.S.C. § 272(c)(15) ......................................................................................... 20

18 U.S.C. § 1836(d) ............................................................................................... 5

18 U.S.C. § 1839(3)(B) .................................................................................. 22, 23

18 U.S.C. § 1839(5) .............................................................................................. 23

N.C. Gen. Stat. §75-16.2 ....................................................................................... 5

N.C. Gen. Stat. Ann. § 1-52(9) ............................................................................. 4

N.Y. General Obligations Law § 5-903 ............................................................... 14

Fiserv Solutions, LLC ("Fiserv") and Fiserv, Inc. ("Defendants") submit this memorandum in support of their Motion to Dismiss Plaintiff's Amended Complaint.

## NATURE OF THE MATTER BEFORE THE COURT

This remains a contractual dispute between sophisticated parties. Self-Help is a large financial institution that acquired Winston-Salem Federal Credit Union ("WSFCU"). Fiserv is a technology company that has provided products and services to WSFCU for decades without incident. After acquiring WSFCU, Self-Help no longer desired these services. Rather than pay contractual termination and deconversion fees and amicably wind down the relationship, Self-Help feigned a "crisis" and wants to litigate a "data breach" case without alleging any actual breach.

After Fiserv moved to dismiss, Self-Help filed an Amended Complaint (the "FAC"). The FAC does not rectify the original complaint's fatal deficiencies, recycling the same claims while adding a handful of new (and immaterial) allegations. Self-Help leaves undisturbed its central contract theory based on a non-disclosure provision that has nothing to do with information security. Self-Help has also declined (again) to identify a contractual standard that Fiserv failed to meet. With no sense of irony, Self-Help claims that Fiserv's offer to upgrade the security of products Self-Help claims are contractually deficient is itself breach. And Self-Help still does not plead any security incident affecting its members' data.

Self-Help still tries to transform a breach of contract claim into "fraud," but that claim (still) fails. Self-Help now alleges that during the January *2026* TRO hearing,

1

Fiserv's counsel's legal arguments somehow "revealed" fraud that occurred" in *2020*. These incredible allegations are not plausible under *Iqbal* and *Twombly*.

## FACTUAL BACKGROUND

WSFCU has been a Fiserv client for over 20 years. In 2014, the parties signed a Master Agreement under which Fiserv provides account processing and related services (as amended, the "Agreement"). (ECF No. 58-2, pp. 1–30.) In addition to license, maintenance, and professional development fees, WSFCU promised to pay for deconversion services if it changed vendors and early exit fees if it terminated other than for material breach.  On December 14, 2020, WSFCU contracted to receive new services through an amendment with an 8-year term that has not expired (the "Amendment"). (ECF No. 58-2, pp. 31–138.)

Fully integrated and governed by New York law (Agreement §§ 11(b), (d)), the Agreement defines Fiserv's obligations concerning performance, functionality, and security and:

- reflects a comprehensive agreement delineating the parties' obligations, risk allocations, and liability limitations;

- expressly waives WSFCU's reliance on unincluded representations or warranties; and

- includes WSFCU's representation that Fiserv's products meet its operational and regulatory needs

(Agreement §§ 6, 7, 11(b).)

2

In December 2024, Self-Help announced a merger with WSFCU,[1] effective January 1, 2025. (FAC, ¶ 18.) Self-Help no longer wanted Fiserv's services and asked to terminate the Agreement without termination fees. After Fiserv declined, Self-Help sent a demand letter alleging security issues with products WSFCU has been using for years. (FAC, Ex. 6.) Self-Help does not allege it (or WSFCU) raised these purported issues before that letter.

## QUESTIONS PRESENTED

1.     Are Self-Help's claims time barred?

2.     Do Self-Help's breach-of-contract and equitable claims fail because the FAC does not allege any contractual obligation Fiserv breached?

3.     Do Self-Help's fraud claims fail due to the economic loss doctrine and Self-Help's failure to plausibly allege falsity, fraudulent intent, or reliance?

4.     Does Self-Help's Defend Trade Secrets Act claim fail without plausible allegations of a trade secret or misappropriation?

5.     Can Self-Help's Chapter 75 claim proceed as an impermissibly derivative breach of contract claim?

## ARGUMENT

A well-pleaded complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

---

[1] *See* https://www.self-help.org/who-we-are/resources/media-center/media-release/self-help-credit-union-winston-salem-federal-credit-union-announce-merger-effective-january-1 (last accessed Mar. 23, 2025).

3

plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## I. SELF-HELP'S CLAIMS ARE TIME BARRED.

All but one of Self-Help's claims are time-barred.[2] *See Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018). The limitations period commenced when WSFCU started using Fiserv's allegedly deficient products and services after signing the Agreement (in 2014) and the Amendment (in 2020). *MRE Tech. Sols. LLC v. Smiths Detection, Inc.*, 216 A.D.3d 430, 431 (N.Y. App. Div. 2023) (contract claim accrues when alleged conduct causing breach occurred). The Agreement's two-year contractual limitations period (Agreement § 7) bars Self-Help's contract claim and unjust enrichment claim (also barred by the three-year statute of limitations). *See Cody Creek Park, Inc. v. Capital One Servs., LLC*, 2017 WL 3172411, at *2 (M.D.N.C. July 25, 2017).

Self-Help's claim that WSFCU was fraudulently induced to enter the 2020 Amendment is subject to a three-year limitations period. N.C. Gen. Stat. Ann. § 1-52(9); *Taylor v. Bank of Am., N.A.*, 898 S.E.2d 740, 745 (N.C. 2024).[3] Based on these same

---

[2] Fiserv does not contend that Self-Help's new claim for "audit records" is time-barred.

[3] North Carolina's statute of limitations governs the fraud claim because it is "the state where [Self-Help's] injury or harm was sustained or suffered." *W. Inv. Foreign Shares, LLC v. McCollum*, 638 F.Supp.3d 595, 602 (W.D.N.C. 2022) (quoting *SciGrip, Inc. v. Osae*, 838 S.E.2d 334, 343 (N.C. 2020).

4

misrepresentations, Self-Help's DTSA and Chapter 75 claims are also time-barred. 18 U.S.C. § 1836(d) (three years); N.C. Gen. Stat. §75-16.2 (four years).

Self-Help tries to plead tolling under the discovery rule, continuing duty doctrine, and supposedly active concealment. (FAC, ¶¶ 106–17.) Its conclusory allegations are insufficient. First, New York does not apply the discovery rule in contract actions. *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 36 N.E.3d 623, 628 (N.Y. 2015). Second, Self-Help cannot plausibly contend that any purported misrepresentation about Fiserv's products and services was not quickly discoverable after WSFCU began using them. *See Taylor*, 898 S.E.2d at 745 (plaintiff cannot "close his eyes to facts observable by ordinary attention and thereby toll the statute of limitations indefinitely."). Indeed, Self-Help alleges that its post-merger security review – something that could have occurred any time – readily identified the supposed lack of compliant MFA. (FAC, ¶¶ 98–101.)

Self-Help contends that it did not "discover" the alleged fraud (which supposedly occurred in 2020) until the TRO Hearing in 2026 when Fiserv's counsel argued that neither the law nor the Agreement legally require Fiserv to comply with NIST standards. (FAC, ¶ 29.) But the law presumes that Self-Help *knew* both the law and the contents of the Agreement when it was signed. *E.g. Lockerby v. Cross Point NC Partners, LLC*, 2023 WL 4918359, at *6 (W.D.N.C. Aug. 1, 2023); *Prompt Mortg. Providers of N. Am., LLC v. Zarour*, 155 A.D.3d 912, 914 (N.Y. App. Div. 2017). Thus, the statute began to run in 2020.

Self-Help's fraudulent concealment theory – that "Fiserv maintained exclusive knowledge of the material defects" – fails for the same reasons. (FAC, ¶ 110.) Additionally,

Self-Help does not actually allege any affirmative act of concealment. (FAC, ¶¶ 112–14.) Self-Help has not alleged any facts to support the "extraordinary circumstances" required for equitable tolling. *See Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 203 F.Supp.3d 608, 614 (M.D.N.C. 2016).

Finally, Self-Help's "continuing duty" theory fails because the claims trace back to a single alleged breach – failing to provide contractually required security features. *See MRE Tech. Sols. LLC*, 216 A.D.3d at 431 ("[T]he fact that plaintiff was subject to continuing effects of defendant's service reduction in 2018 does not amount to a continuing series of wrongs"); *see also Network Apps, LLC v. AT&T Mobility LLC*, 778 F.Supp.3d 610, 628 (S.D.N.Y. 2025) (rejecting continuing violations doctrine because obligation not to misuse plaintiff's intellectual property was "not divisible in nature" from an obligation to pay royalties).

## II. SELF-HELP HAS NOT PLAUSIBLY ALLEGED BREACH OF ANY CONTRACTUAL OR QUASI-CONTRACTUAL OBLIGATION.

Rule 8 requires that Self-Help provide a plausible factual description of how Fiserv's performance failed to meet contractual requirements. *See ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211–12 (4th Cir. 2019). Self-Help cannot avoid dismissal by choosing not to identify the particular contractual obligations Fiserv breached. *Georgion v. Bank of Am., N.A.*, 2025 WL 2388779, at *7 (W.D.N.C. Aug. 18, 2025); *Brainbuilders LLC v. EmblemHealth, Inc.*, 2022 WL 3156179, at *7 (S.D.N.Y. Aug. 8, 2022).

6

**A.     The FAC Ignores the Agreement's Schedules and Exhibits and Does Not Allege a Breach as to Any Particular Product or Service.**

Fiserv agreed to provide the products and services "described in the attached Exhibits, subject to the terms set forth in this Agreement and in the applicable Exhibit." (Agreement, § 1.) Through the Amendment, Fiserv and Self-Help agreed to ***19 separate schedules and exhibits***, which define Fiserv's performance obligations, including, the security and authentication processes Fiserv would provide (or that Self-Help declined).[4] Whether Fiserv was required to provide specific security features for a particular product or service depends on what the Agreement, schedules and exhibits say.

Self-Help ignores this, blithely alleging that certain products and services do not have "proper" or "compliant" MFA. (FAC, ¶¶ 3, 99–101.) Conveniently omitted is any reference to any provision requiring a particular type of MFA or security feature that Self-Help claims Fiserv must, but allegedly failed to, provide. This "hide-the-ball" approach is antithetical to Rule 8 and irreconcilable with *Twombly*'s plausibility standard. *See Georgion.*, 2025 WL 2388779, at *7 ("Because plaintiffs have not identified a contractual obligation on the part of defendant to 'maintain the safety and security' of plaintiffs' online banking, plaintiffs have failed to allege plausibly a breach of contract on this basis.").

---

[4] For example, in the Digital Online Banking Services Schedule, WSFCU was offered (but declined, at that time, to purchase) Fiserv's SecureNow Service, which provides multi-factor authentication ("MFA") through one-time passcodes. (Amendment, p. 69, § 3(b).)  In the Web Signatures Services Schedule, WSFCU disclaimed any warranty regarding the appropriateness of WSFCU's chosen "Authentication Measures." (*Id.*, p. 107, § 1(c)(iii).)

7

**B. Self-Help's Reliance on Sections 3 and 4 of the Agreement Is Irreconcilable with Their Plain Language.**

Unwilling (or unable) to address specific obligations in the Agreement's schedules and exhibits, Self-Help attempts to supplant them by extracting non-existent standards from a confidentiality provision (Agreement § 3) and a provision requiring Fiserv to have an information security program (Agreement § 4).

**1. Self-Help Cannot State a Claim Under Section 3.**

Section 3 ("Confidentiality and Ownership") is a standard confidentiality and non-disclosure provision that has nothing to do with MFA, one-time passcodes, or data security. Nonetheless, Self-Help alleges that Section 3 requires Fiserv to implement security features for the products and services it provides to Self-Help that are equivalent to those Fiserv uses for its internal systems. (FAC, ¶¶ 1–3, 33–35.) That argument fails.

First, Section 3(b) is an ordinary, ***mutual*** confidentiality and non-disclosure agreement, the plain language, structure, and obvious intent of which fatally undermine Self-Help's skewed interpretation. Section 3 generically defines the terms "Discloser" – the entity providing confidential information – and "Recipient" – the entity receiving confidential information. Section 3(b) does not impose obligations only on "Fiserv," but equally on any "Recipient" of "Information":

> Recipient agrees to hold as confidential all Information it receives from the Discloser. All Information shall remain the property of Discloser or its suppliers and licensors. Recipient will use the same care and discretion to avoid disclosure of Information as it uses with its own similar information that it does not wish disclosed, but in no event less than a reasonable standard of care and no less than is required by law. Recipient

8

> may only use Information for the lawful purposes contemplated by this Agreement….

(Agreement, § 3(b).)

Section 3(b) defines what uses are permitted, third parties to whom Information may be disclosed, and what happens to Information when the Agreement expires. Section 3(b) does **not** discuss information security, MFA, token-generated codes, biometrics, or layered authentication. Section 3(b)'s plain language does not address the security features of the products and services Fiserv provides. The Court should apply this plain and unambiguous language, *Piccirilli v. Yonaty*, 204 A.D.3d 1322, 1323 (N.Y. App. Div. 2022), and disregard contradictory allegations. *Davis v. Univ. of N.C. at Greensboro*, 2022 WL 3586093, at *8 (M.D.N.C. Aug. 22, 2022).

Second, Self-Help's construction would lead to absurd results. Fiserv is a Fortune 500 company with thousands of employees that provides a plethora of fintech services to customers around the world. WSFCU, on the other hand, was a small regional credit union. The idea that these two entities would need or want the "same" security features is specious. The idea that, had that been the parties' intent, this arrangement would be buried in a single sentence of a confidentiality provision, even more so. And in that (incredible) case, there would be no need for other provisions regarding information security (like Section 4 – entitled "Information Security") or the particular security features for specific products, yet such provisions indisputably exist. Courts will not interpret contracts in a manner that would produce "absurd" or "commercially unreasonable" results. *Cole v. Macklowe*, 99 A.D.3d 595, 596 (N.Y. App. Div. 2012).

9

Self-Help wants to transform a straightforward promise by Fiserv not to disclose certain information into an obligation to prevent unauthorized access to all of Self-Help's data by third parties. "Disclosure" and "access" mean different things. *Compare* DISCLOSURE, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The act or process of making known something that was previously unknown; a revelation of facts <a lawyer's disclosure of a conflict of interest>.") *with* ACCESS, *id.* ("A right, opportunity, or ability to enter, approach, pass to and from, or communicate with <access to the courts>."). Courts frequently distinguish between "disclosure" and "access" in, *inter alia*, cases involving the Computer Fraud and Abuse Act,[5] privacy statutes,[6] and contracts.[7] Giving the term "disclosure" its plain meaning, *Meda AB v. 3M Co.*, 969 F.Supp.2d 360, 379 (S.D.N.Y. 2013) (undefined terms are given their "ordinary meaning"); *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 210 (4th Cir. 2022), Section 3(b) does not obligate Fiserv to prevent unauthorized **access** to Self-Help's data, much less an unbounded obligation to "replicate" Fiserv's own security environment for Self-Help.

Finally, by asking the Court to interpret a general contractual provision about "Confidentiality and Ownership" to override the specific product features and contractual

---

[5] *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F.Supp.2d 479, 499 (D. Md. 2005) (The CFAA "do[es] not prohibit the unauthorized disclosure or use of information, but rather unauthorized access.").

[6] *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 858 (N.Y. Sup. Ct. 2015) ("[T]he theft of the subject data cannot constitute a disclosure of said information").

[7] *Dauphin v. Crownbrook ACC LLC*, 2014 WL 2002822, at *7 (E.D.N.Y. May 15, 2014) (dismissing claim based on obligation not to "use, divulge, disclose or make accessible" confidential information where no evidence that defendant "used or disclosed" information).

10

obligations in the Agreement's 19 schedules and exhibits, Self-Help violates the fundamental interpretive canon that specific language prevails over general. *In re AMR Corp.*, 730 F.3d 88, 99 (2d Cir. 2013).

### 2. Self-Help Cannot State a Claim Under Section 4.

Section 4 requires Fiserv to implement and maintain an information security program. (Agreement, § 4(a).) Self-Help does not allege that Fiserv lacks such a program. Instead, Self-Help alleges Fiserv breached Section 4(a) by "failing to implement an information security program that appropriately protects the security and confidentiality of Self-Help's information." (FAC, ¶ 122(b).)

Self-Help does not allege how Fiserv breached Section 4(a) and offers no standard (other than Self-Help's subjective view) as to what program would be "appropriate." That Self-Help may not like Fiserv's information security program does not state a claim. To the extent Self-Help bases this claim on the notion that Fiserv must replicate its security environment for Self-Help, the claim fails as explained above. To the extent Self-Help asserts that "NIST" guidelines and undefined "federal regulatory guidance" control, nothing in Section 4 even mentions, much less incorporates, those standards.[8]

The FAC speculates about risks of a future data incident, but Section 4 expressly contemplates that unauthorized access might occur, notwithstanding a robust information

---

[8] Fiserv did agree to "use security safeguards for all personal information pertaining to Massachusetts residents in accordance with Massachusetts Regulation 201 CMR 17.00." (Agreement, § 4(a).) Under the interpretive canon *expressio unius est exclusion alterious*, the reference to this standard, but no others, makes clear the parties did not intend to incorporate other third-party standards into Section 4. *Gillen v. Town of Hempstead Town Bd.*, 63 Misc.3d 653, 658 (N.Y. Sup. Ct. 2019).

security program, by requiring that Fiserv address "incidents of unauthorized access to Client's 'sensitive customer information' (as defined in GLB), including notification to Client as soon as possible . . . ." (Agreement, § 4(a).) So, even if there had been unauthorized access to Self-Help's information (which is not alleged) that still would not breach Section 4. Indeed, a data breach cannot alone plausibly demonstrate inadequate security controls. *In re Block, Inc. Sec. Litig.*, 2025 WL 2607890, at *7 (S.D.N.Y. Sept. 9, 2025). Self-Help does not allege even that much; it only speculates that a future incident could happen. (FAC, ¶¶ 85–97.) Such conclusory and speculative allegations do not state a claim. *See Stuart v. Kyocera AVX Components Corp.*, 769 F.Supp.3d 476, 487 n.7 (D.S.C. 2025) (rejecting "conclusory allegation that Defendant does not have 'adequate safeguards' to protect Plaintiffs' PII.").[9]

### C. Self-Help's New Complaint About Upgrades to Enhanced Authentication Does Not State a Claim.

Self-Help alleges that Fiserv's Enhanced Authentication product is contractually deficient. (FAC, ¶ 58.) But Self-Help also alleges that Fiserv may not upgrade or replace Enhanced Authorization (with SecureNow) without also breaching the Agreement. (FAC, ¶ 122(f).) Self-Help's "catch-22" tactics do not state a claim.

---

[9] Self-Help's failure to plead a contract claim precludes its "good faith and fair dealing" claim. A "claim for breach of the implied covenant of good faith and fair dealing will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant or an express provision of the underlying contract." *Boart Longyear Ltd. v. All. Indus., Inc.*, 869 F.Supp.2d 407, 413 (S.D.N.Y. 2012).

12

The Agreement makes this clear. Specifically, the Digital Online Banking Services Schedule governs online banking services, including Enhanced Authentication and Secure Now. (Amendment, pp. 67–70.) The Schedule authorizes Fiserv to "automatically release new version(s) of the Services that improves existing functions or performance." (*Id.* ¶ 2(c).) WSFCU agreed to specific terms governing its receipt or future receipt of SecureNow in the Digital Online Banking Schedule. (*Id.* ¶ 3(b).) That plain and unambiguous language precludes Self-Help's claim. Fiserv's proactive effort to upgrade the very security features about which Self-Help complains is not a breach of contract.

### D.    Audit Documents.

Self-Help alleges Fiserv failed to provide "audit documentation" pursuant to Sections 4(a)–(b) and Section 10(b) of the Agreement, and Sections 4(d), 4(h), and 6(c) of the ASP Services Exhibit (FAC, ¶¶ 122(c)–(d)). Self-Help demanded this "audit documentation" on November 24, 2025, and complains that Fiserv has taken too long to provide it. (FAC, ¶¶ 102–105.)

Here, too, Self-Help is playing gotcha. Its letter purports to terminate the Agreement and demands that Fiserv immediately transition Self-Help to a new processing vendor. (FAC, Ex. 6.) Self-Help then sued and demanded expedited discovery. As to "audit records," however, Self-Help wants Fiserv to continue performance under an Agreement Self-Help terminated and provide documents outside the discovery process. Self-Help cannot have it both ways.

13

In any event, the FAC's exhibits make clear that Fiserv has provided Self-Help's counsel with its information security plan pursuant to Section 4(b). (FAC, Ex. 8.) Several of those documents form the basis of Self-Help's fraud claim (revealing that Self-Help is not interested in audit reports, only in backfilling some factual basis for its claims). Further, as Self-Help's attempt to file "SOC" reports and Fiserv's request to seal them, (ECF Nos. 38, 41), shows Self-Help has received the reports contemplated by Section 4(a) of the Agreement and Section 4(h) of the ASP Services Exhibit. Self-Help has not plausibly alleged that Fiserv breached any present obligation concerning "audit documentation."[10]

### E. The Agreement's Unexpired Term Precludes Any Claim Under N.Y General Obligation Law § 5-903.

Self-Help alleges Fiserv violated N.Y. General Obligations Law § 5-903 by effectuating "an automatic renewal of the Master Agreement without providing the required personal or certified mail notice to Self-Help beforehand." (FAC, ¶ 122(e).) This is remarkable given no automatic renewal has occurred. The 2020 Amendment established an eight-year term that has not expired. (Amendment, § 2.) The claim is frivolous.

### F. Self-Help's Claims for Unjust Enrichment and Equitable Remedies Fall With Its Contract Claims.

Unjust enrichment is an equitable *remedy* based on an implied contract. *Washington v. Wells Fargo Bank, Nat'l Ass'n*, 2023 WL 415483, at *4 (M.D.N.C. Jan. 25, 2023). An

---

[10] That leaves Self-Help's blanket demand for an "invoice audit" under Section 10(b). Despite Fiserv's requests, Self-Help refuses to identify any particular invoice or issue for which it seeks documentation. Such an undifferentiated request is unreasonable and does not trigger Fiserv's obligations under Section 10(b). Further, Section 10(b) imposes no deadline for a response and, given Self-Help's refusal to explain the scope of its request, Self-Help has not alleged, and cannot allege, that a reasonable time for compliance has passed. *Schmidt v. McKay*, 555 F.2d 30, 36-37 (2d Cir. 1977).

14

express contract governing the parties' obligations bars an unjust enrichment claim. *Velocitor Sols., LLC v. ASA Coll., Inc*., 2022 WL 18135189, at \*11 (M.D.N.C. Oct. 12, 2022). Self-Help alleges the Agreement, which "constitutes the complete and exclusive statement of the agreement between the parties" (Agreement, § 11(b)), is valid and binding. (FAC, ¶¶ 119, 132.) The unjust enrichment claim thus fails.

Likewise, recission and specific performance are ***remedies*** and unavailable without a plausibly pleaded breach-of-contract claim. *WestLB AG v. BAC Fla. Bank*, 912 F.Supp.2d 86, 94 (S.D.N.Y. 2012) (specific performance); *Cherokee Owners Corp. v. DNA Contracting, LLC*, 96 A.D.3d 480, 481 (N.Y. App. Div. 2012) (rescission). Neither is appropriate where an adequate remedy at law exists. *T.F. Demilo Corp. v. E.K. Const. Co.*, 207 A.D.2d 480, 481 (N.Y. App. Div. 1994) (specific performance); *Romanoff v. Romanoff*, 148 A.D.3d 614, 616 (N.Y. App. Div. 2017) (rescission). Here, Self-Help alleges financial loss, (FAC, ¶¶ 44, 125), conceding the adequacy of money damages.

Finally, without a viable contract claim, issues of exculpation and limitations of liability are not ripe. Self-Help has not pleaded any imminent "auto-renewal," and the current term is years from expiration. As to early termination, Self-Help has not asked to terminate for convenience (and presumably would never candidly reveal that as its real goal). Nor has Self-Help pleaded any reason it should not be required to pay for deconversion services it uses to facilitate transition to a new vendor. That Self-Help would like preemptory and advisory rulings on every contractual term it dislikes (but indisputably agreed to) does not merit declaratory relief. *See Velez v. Bank of New York Mellon Tr. Co.*

15

*N.A.*, 2012 WL 5305508, at *5 (E.D. Va. Oct. 23, 2012) (dismissing conclusory claims that obligations were unenforceable).

## III.    SELF-HELP'S FRAUD CLAIMS FAIL AS A MATTER OF LAW.

Self-Help's fraud and fraudulent inducement claims (FAC, ¶¶ 164–77) have identical elements. *Hale v. MacLeod*, 904 S.E.2d 142, 150 (N.C. App. 2024). Self-Help must allege: (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; and (5) that results in damage. *Comer v. Pers. Auto Sales, Inc.*, 368 F.Supp.2d 478, 485 (M.D.N.C. 2005). Self-Help fails to state a claim under either iteration.[11]

### A.    Self-Help's Fraud Claim Is Barred by Economic Loss Doctrine.

"The economic loss doctrine 'prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law.'" *Superior Performers, Inc. v. Thornton*, 2021 WL 2156960, at *7 (M.D.N.C. May 27, 2021). The doctrine applies to fraud claims based entirely on alleged failures "to carry out a promise in contract." *Strum v. Exxon Co., USA*, 15 F.3d 327, 331 (4th Cir. 1994). That is all Self-Help alleges here.

Self-Help alleges "misrepresentations" from four sources:

- The Agreement. (FAC ¶¶ 167–69.)

- A "compliance package" stating or suggesting: (i) Fiserv's "policies and standards" complied with "accepted control standards, frameworks, and industry standards" and were consistent with [NIST's] Cyber Security

---

[11]   The FAC also fails to satisfy Rule 9(b). *See McCauley v. Hospira, Inc.*, 2011 WL 3439145, at *5 (M.D.N.C. Aug. 5, 2011). Self-Help does not identify the date these representations were made nor the "identity of each person making the misrepresentations"—instead blanketly attributing each to the Fiserv entities more broadly. These conclusory allegations fail under Rule 9(b). *United Guar. Residential Ins. Co. of N. Carolina v. Countrywide Fin. Corp.*, 2010 WL 11541968, at *8 (M.D.N.C. Sept. 2, 2010).

16

Framework; and (ii) Fiserv utilized multi-factor authentication. (*Id.*, ¶¶ 65–72.)

- A *Fiserv Cybersecurity Fact Sheet 2025* stating Fiserv's cybersecurity policies were: (i) "based on authoritative sources that include regulatory and industry publications such as NIST's Cyber Security Framework"; and (ii) "designed to meet applicable industry and regulatory requirements." (*Id.*, ¶¶ 73–75.)

- A publicly available "Privacy Notice" stating Fiserv has "in place appropriate security measures to prevent…personal data from being lost, used or accessed in any unauthorized way, altered or disclosed." (*Id.*, ¶¶ 76–78.)

Self-Help alleges that Fiserv misrepresented "its performance and intention to perform," did not sufficiently "implement two-factor authentication," and does not "comply with accepted control standards, frameworks, and industry practices" or "have appropriate security measures in place to prevent Self-Help's data from being used or accessed in an unauthorized way." (*Id.*, ¶¶ 70, 78, 167–69.) Put differently, Self-Help alleges Fiserv's alleged failure to provide the security measures Self-Help deems "appropriate" makes these statements "fraudulent."[12]

Self-Help alleges that Fiserv's failure to provide those ***very same*** security controls constitutes a breach of the Agreement. (*Id.*, ¶¶ 33–44, 118–39.) Nearly a dozen paragraphs allege the Agreement requires Fiserv to provide "robust, high-assurance [security] measures," including those referenced in what Self-Help characterizes as mandatory

---

[12] Given the posture under Rule 12(b)(6), Fiserv will not address the threshold problem that Self-Help could never prove these statements, particularly when read in their full context, were false when made. For example, Fiserv indisputably uses MFA, and its security features are certainly "based on" and "designed to meet" applicable regulatory and industry standards, all of which Fiserv believes are "appropriate" measures for the applications provided to its clients.

"[f]ederal standards and supervisory guidance." (*See id*., ¶¶ 33–44.) Self-Help uses nearly verbatim language to describe Fiserv's alleged breach of its "security" obligations and its alleged "misrepresentations." (*Compare id.* ¶ 43 ("Fiserv deploys stronger token- or app-based authenticators for its own systems, but failed to provide equivalent protections to Self-Help, in breach of the Master Agreement.") *with id.* ¶ 169 ("Fiserv's failure to implement two-factor authentication constitutes both fraud and fraudulent misrepresentation.").)

Self-Help has merely repackaged its contract claims as "fraud." The economic loss doctrine prohibits just that. *Strum*, 15 F.3d at 331.

### B. Self-Help's New Fraudulent Inducement Theory Fails.

The FAC floats a "new" fraudulent inducement theory, alleging that Fiserv provided a written "Security Overview" to WSFCU before the 2020 Amendment. That document states that Fiserv "performs ongoing rigorous analysis of its existing cybersecurity standards and practices to maintain alignment with the NIST framework." (FAC, ¶ 25.) Self-Help claims to have discovered this "fraud" during the January 2026 TRO hearing when Fiserv's counsel "asserted in open court that NIST is not mandatory or binding on Fiserv, and that there is nothing in Fiserv's contract that requires Fiserv to adopt NIST standards." (FAC, ¶ 29.)[13]

---

[13] Fiserv's counsel actually said: "They also suggest at times that we are obligated to implement whatever standards are decreed by NIST, and what they call, you know, "applicable federal regulatory standards," although they don't define what those are. Our position is, that nothing in our contract requires us to do that, and those NIST standards in particular, are only binding on government entities, they are not binding on private entities." (TRO Hearing Transcript, 17:3–17:19)

This new "fraud" claim also fails. Fraud requires a misrepresentation of "subsisting or ascertainable fact," as opposed to matters of opinion or future prediction, like "maintaining alignment" with NIST standards. *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974). The misrepresentation must be "definite and specific." *Id.* In stark contrast, the statements Self-Help quotes from the Security Overview are general, aspirational, and forward-looking statements about the overall design and objectives of Fiserv's cybersecurity program. Self-Help does not identify a specific statement about any product or service it receives under the Amendment.

Likewise, Self-Help does not plausibly allege that any statement in the Security Overview was false when made. Much less made with fraudulent intent. The FAC contains no allegations about Fiserv's cybersecurity practices at the time or any facts suggesting the statements did not then accurately describe Fiserv's cybersecurity objectives and practices. Self-Help alleges only that statements made by Fiserv's counsel more than 5 years later somehow conflict with the *Security Overview*. Even if that were true (and Fiserv denies any inconsistency), that alone would be insufficient to plead either falsity or intent. *Hale v. MacLeod*, 904 S.E.2d 142, 150 (N.C. Ct. App. 2024) (stating that "mere unfulfilled promises cannot be made the basis for an action of fraud."); *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F.Supp.3d 790, 799 (E.D.N.C. 2019) (recognizing that "non-performance is not sufficient to establish the necessary fraudulent intent"); *Further Festivals, LLC v. Etix, Inc.*, 2024 WL 1546919, at *5 (E.D.N.C. Apr. 9, 2024) (change in defendant's position three days later did not establish fraud).

19

The simple fact is that the parties' written agreement – the Master Agreement, the Amendment, and their associated schedules and exhibits – define the parties' rights and obligations, including with respect to the security features of Fiserv's products and services. A party is presumed to know the law and the terms of the contracts it signed. *Dalton v. Dalton*, 596 S.E.2d 331, 333 (N.C. 2004). That nothing in the Agreement or the Amendment requires Fiserv to implement (much less immediately, as Self-Help seems to suggest) every new NIST standard is obvious from reading the Agreement. That NIST standards – although used by many private institutions, including Fiserv, for guidance– are not binding on private entities, *see* 15 U.S.C. § 272(c)(15), is something WSFCU was able to ascertain, and is charged with knowing, before entering into the Amendment (or filing this action). Fiserv's counsel's recitation of the law and Fiserv's interpretation of the Agreement did not evidence, reveal, or constitute "fraud." *Cross v. Formativ Health Mgmt., Inc.*, 439 F.Supp.3d 616, 627 (E.D.N.C. 2020) ("[a] party's statement of a legal position or an assertion about its rights or position under the law is not an actionable misrepresentation").

### C. Self-Help's Allegations Preclude a Plausible Allegation of Reliance.

As to claims based on the 2025 Cybersecurity Fact Sheet, Compliance Package, and Privacy Notice, Self-Help attempts to plead reliance by asserting that: (i) pre-merger WSFCU "relied" by "entering into the Master Agreement and other transactions with Fiserv," and (ii) pre-merger Self-Help "relied" in assessing the suitability of merging with

20

WSFCU. (FAC, ¶¶ 173–74.) Neither plausibly pleads reliance. *See Peter Marco, LLC v. Banc of Am. Merch. Servs., LLC*, 660 F.Supp.3d 453, 468 (W.D.N.C. 2023).

As to pre-merger WSFCU, Self-Help does not allege any misrepresentation **before** WSFCU entered the 2014 Agreement or the 2020 Amendment. Self-Help does not ascribe a date to the Fiserv "Compliance Package" or "Privacy Notice," and, therefore, does not plausibly plead that either occurred before the Agreement or the Amendment. (FAC, ¶¶ 64–72, 76–78.) And Self-Help alleges the "Cybersecurity Fact Sheet" was distributed in **2025**, years after the Agreement and the Amendment. (*Id.*, ¶ 73.)

Perhaps realizing this fatal flaw, Self-Help tries to allege "reliance" on these statements in deciding to merge with WSFCU. (*Id.*, ¶ 174.) Self-Help announced the merger in 2024, so that allegation is certainly untrue for the 2025 Cybersecurity Fact Sheet. As to the other "representations," there is no allegation anyone at Self-Help reviewed these documents (at all or for the merger) and no allegation that Self-Help communicated with Fiserv to confirm the continued accuracy of these statements. A misrepresentation must be false when made, not some undefined later time when Self-Help (maybe) reviewed these documents. *Childress v. Nordman*, 78 S.E.2d 757, 761 (N.C. 1953). And, even if Self-Help pleaded actual reliance (it did not), blind reliance on old publications without any effort to confirm them is not "reasonable." *Kumar v. Patel*, 2024 WL 849419, at *11 (N.C. Super. Feb. 28, 2024) ("Reliance is not reasonable if Plaintiffs fail to make any independent investigation as to the truth of the assertion.").

21

Moreover, as a successor-in-interest, Self-Help is charged with WSFCU's pre-merger knowledge as it existed before the merger. *See Victor v. Home Sav. of Am.*, 645 F.Supp. 1486, 1499 (E.D. Mo. 1986); *Cloer v. King Arthur Inc.*, 918 S.E.2d 479, 484 (N.C. Ct. App. 2025). Self-Help cannot use the merger to "refresh" old statements into "new" representations or create "reliance" where, as a matter simple chronology, there was none.

## IV. SELF-HELP DOES NOT PLAUSIBLY PLEAD "TRADE SECRETS" OR "MISAPPROPRIATION."

A DTSA claim requires a valid trade secret that the defendant misappropriated. *See Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025). A trade secret must derive independent economic value from its secrecy. 18 U.S.C. § 1839(3)(B). A plaintiff cannot merely allege that information is "of value," but must plausibly plead "value specifically tied to secrecy." *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 771 (4th Cir. 2023).

Self-Help perfunctorily alleges its members' and employees' identities, contact information, and financial and transaction history constitute trade secrets. (FAC, ¶ 152.) First, a basic list of names and contact information is not a trade secret. *See UBS Painewebber, Inc. v. Aiken*, 197 F.Supp.2d 436, 447 (W.D.N.C. 2002) ("customer names and addresses not a 'trade secret'" under N.C. Trade Secrets Act); *Aira Jewels, LLC v. Mondrian Collection, LLC*, 2024 WL 1255798, at *5 (S.D.N.Y. Mar. 25, 2024) (holding customer lists not trade secrets "if they are little more than a compilation of publicly available information, such as contact information").

22

Second, Self-Help does not and cannot allege how this information derives independent economic value from remaining secret. The contrary is true. This information valuable (if at all) ***precisely because it can be shared with third parties*** (*e.g.,* lenders, credit reporting agencies) to conduct transactions or extend credit. *Cf. Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F.Supp.3d 1070, 1087 (D. Colo. 2018) ("In addition to not having independent economic value, payment card data do not derive their value from their nondisclosure."). Self-Help focuses on the harm that could occur if one's personal information was accessed by a bad actor (FAC, ¶¶ 85–97), but that is the wrong question. The correct question is whether ***Self-Help*** realizes independent economic value specifically because member and employee information remains secret, 18 U.S.C. § 1839(3)(B); *Synopsys, Inc.*, 70 F.4th at 771, something Self-Help does not (and cannot) allege.

Self-Help fails to plausibly plead misappropriation for which courts in this Circuit "insist upon some specificity…because it is the type of claim that has the potential to seriously disrupt ordinary business relationships." *Sysco Mach. Corp.*, 143 F.4th at 230. To "misappropriate" under the DTSA, a party must either disclose or use a trade secret without consent or acquire a trade secret through "improper means." 18 U.S.C. § 1839(5). The lawful acquisition of information in a commercial relationship does not constitute acquisition by "improper means." *Sysco Mach. Corp.*, 143 F.4th at 230.

Self-Help does not allege Fiserv disclosed any "trade secrets." Rather, Self-Help makes only conclusory allegation that Fiserv acquired Self-Help's trade secrets "through

23

improper means, including by misrepresenting to Self-Help the existence and nature of Fiserv's security controls." (FAC, ¶ 158.) That conclusion is implausible. Self-Help has been a Fiserv client for decades, and the parties have shared information under the Agreement as a part of their ongoing commercial relationship. That is exactly what Section 3(b) contemplates. Self-Help has not alleged receipt by "improper means" or any misappropriation, much less with the requisite particularity.

## V. SELF-HELP'S CHAPTER 75 CLAIM FAILS.

A breach of contract, even if intentional, does not trigger liability under Chapter 75. *See Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012) ("North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and alleged UDTP out of facts that are properly alleged as [a] breach of contract claim."). A breach of contract cannot support a Chapter 75 claim without "substantial aggravating circumstances attending the breach." *Id.*

Confined to a single, conclusory paragraph, Self-Help's "factual" allegations for its Chapter 75 claim are indistinguishable from those supporting the contract claim. (FAC, ¶ 180.) Nowhere does Self-Help allege "substantial aggravating circumstances." Self-Help has not pleaded a Chapter 75 claim. *See Post v. Avita Drugs, LLC*, 2017 WL 4582151, at *5 (N.C. Super. Oct. 11, 2017) (dismissing Chapter 75 claim where the case turned on "determining whether the parties properly fulfilled their contractual duties").

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims in the Amended Complaint on the merits and with prejudice.

Respectfully submitted on March 23, 2026.

**FOLEY & LARDNER LLP**

*/s/ Joseph S. Dowdy*

Joseph S. Dowdy
N.C. State Bar No. 31941
4140 Parklake Avenue, Suite 610
Raleigh, NC 27612
Phone: (984) 375-3033
Email: joe.dowdy@foley.com

OF COUNSEL:
Andrew J. Wronski*
Jesse Byam-Katzman*
Bryan B. House
Timothy J. Patterson
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Phone: (414) 271-2400

*Counsel for Defendants Fiserv Solutions, LLC and Fiserv, Inc.*

* Special Appearances Under Local Civ. R. 83.1(d) entered

25

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,241 words, which complies with the word limit of L.R. 7.3.

Respectfully submitted on March 23, 2026.

<div style="text-align: right">

*/s/ Joseph S. Dowdy*
Joseph S. Dowdy
N.C. State Bar 31941
Foley & Lardner LLP

</div>

# CERTIFICATE OF SERVICE

I hereby certify that I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF System, which will automatically serve notice of such filing to the following registered PACER users in the case:

Charles Nerko (cnerko@nerko.com)
Walter E. Swearingen (wswearingen@nerko.com)
John C. Cleary (jcleary@nerko.com)
Nerko PLLC
1178 Broadway, 3rd Floor
New York, NY 10001

Mark S. Pincus (mark@gardnerskelton.com)
Gardner Skelton PLLC
3746 N. Davidson Street
Charlotte, NC 28205

Respectfully submitted on March 23, 2026.

<div align="right">

*/s/ Joseph S. Dowdy*
Joseph S. Dowdy
N.C. State Bar 31941
Foley & Lardner LLP

</div>

27